**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

Plaintiff,

v.

MARRIOTT OWNERSHIP RESORTS, INC., VSE PACIFIC INC., and VISTANA VACATION OWNERSHIP, INC., OPERATING UNDER THE UMBRELLA OF MARRIOTT VACATIONS WORLDWIDE CORPORATION,

Defendants.

Case No. 24-cv-08027 (PMH)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE REVISED CLAIM OF JANE DOE AND TO COMPEL ARBITRATION

**BAKER & HOSTETLER LLP**
Michelle N. Tanney
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
mtanney@bakerlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page


I. PRELIMINARY STATEMENT ....................1

II. STATEMENT OF FACTS ....................3

A. Plaintiff's July 2017 Purchase of a Timeshare Interest and Subsequent Use ....................3

B. Plaintiff's August 2019 Purchase of a Timeshare Interest and Subsequent Use ....................5

III. PROCEDURAL HISTORY ....................7

IV. LEGAL STANDARD ....................9

A. Motion to Dismiss ....................9

B. Motion to Compel Arbitration ....................11

V. LEGAL ARGUMENT ....................12

A. Plaintiff's Claims Are Subject to Mandatory Arbitration. ....................12

1. The Parties Agreed to Arbitrate Plaintiff's Claims. ....................12

2. Plaintiff's Claims are Covered by the Arbitration Provisions. ....................15

B. The Amended Complaint Must Be Dismissed For Three Equally Fatal Procedural Reasons. ....................16

1. Even If The Claims Were Not Subject To Mandatory Arbitration, The Southern District Of New York Is Not The Proper Venue. ....................16

2. Plaintiff Has Named Improper Parties In The Initial Complaint And The Amended Complaint. ....................17

3. Plaintiff Has Not Properly Served Any Party With Process, Therefore, Dismissal is Warranted Under Rule 12(b)(5). ....................18

C. Substantively, Plaintiff's Causes Of Action As Set Forth In The Amended Complaint Wholly Fail To State A Cause Of Action. ....................20

1. Plaintiff's Hypothetical, "Possible" Causes Of Action Fail to State A Claim. ....................20

2. Unconscionability Is Not A Cause Of Action Or A Legal Remedy. ....................20

3. Plaintiff's Fraud Allegations Are Not Pleaded With The Requisite Particularity. .....21

4. Plaintiff's Fraud Claims Are Also Barred By The Applicable Statute Of Limitations. .....21

CONCLUSION .....22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcoa Corp. v. Anheuser-Busch InBev SA/NV*,
No. 20-CV-3834, 2020 WL 5229706 (S.D.N.Y. Sept. 2, 2020)....12

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)....11

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)....10

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003)....11

*Billboard Media, LLC v. Wray*,
No. 23 CIV. 7809 (AT) (SLC), 2024 WL 2941270 (S.D.N.Y. Apr. 25, 2024), report and recommendation adopted, No. 23 CIV. 7809 (AT) (SLC), 2024 WL 4299048 (S.D.N.Y. Sept. 25, 2024)....13

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....11

*Cannon v. US Bank, NA*,
No. CIV. 11-00079 HG-BMK, 2011 WL 1637415 (D. Haw. Apr. 29, 2011)....20

*Catz v. Precision Glob. Consulting*,
No. 19 CIV. 7499 (ER), 2021 WL 1600097 (S.D.N.Y. Apr. 23, 2021)....15

*Citadel Servicing Corp. v. Castle Placement, LLC*,
431 F. Supp. 3d 276 (S.D.N.Y. 2019)....11

*Dear v. Q Club Hotel*,
933 F.3d 1286 (11th Cir. 2019)....2

*Dow Jones & Co., Inc. v. Perplexity AI, Inc.*,
No. 24 CIV. 7984 (KPF), 2025 WL 2416401 (S.D.N.Y. Aug. 21, 2025)....10

*Ellenwood v. World Triathlon Corp.*,
No. 8:20-CV-1182-T-60AEP, 2021 WL 62482 (M.D. Fla. Jan. 7, 2021)....2

*Feingold v. Hankin*,
269 F. Supp. 2d 268 (S.D.N.Y. 2003)....10

*George v. Prof'l Disposables Int'l, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016)....10

*Harrington v. Atl. Sounding Co., Inc.*,
602 F.3d 113 (2d Cir. 2010)....................11

*Jordan-Rowell v. Fairway Supermarket*,
No. 18CV01938 (VEC) (DF), 2019 WL 570709 (S.D.N.Y. Jan. 16, 2019), report and recommendation adopted, No. 18-CV-1938 (VEC), 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019)....................9, 16, 19

*Kottler v. Deutsche Bank AG*,
607 F.Supp.2d 447 (S.D.N.Y. 2009)....................21

*Lok v. Experian Info. Sols., Inc.*,
No. 21 CV 154 (NSR), 2022 WL 889215 (S.D.N.Y. Mar. 25, 2022)....................11, 12

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................9

*Mensah v. Boeing Corp.*,
No. 23-CV-2465 (JLC), 2023 WL 5739012 (S.D.N.Y. Sept. 6, 2023)....................19

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................11

*Passero v. Ford*,
No. 20-CV-05631 (PMH), 2021 WL 1299507 (S.D.N.Y. Apr. 7, 2021)....................11, 12

*Reeves v. Safeguard Properties Mgmt., LLC*,
No. 19-CV-10210 (VSB), 2021 WL 2403538 (S.D.N.Y. June 10, 2021)....................14

*Roy v. Law Offices of B. Alan Seidler, P.C.*,
284 F. Supp. 3d 454 (S.D.N.Y. 2018)....................10

*Scott v. AAM Holding Corp.*,
No. 23-CV-01909 (ALC), 2025 WL 1078302 (S.D.N.Y. Mar. 19, 2025)....................13, 14

*Simpson v. Specialized Loan Servicing*,
LLC, No. 8:22-CV-892-CEH-SPF, 2023 WL 2599413 (M.D. Fla. Mar. 22, 2023)....................20

*Strouss v. Simmons*,
66 Haw. 32, 657 P.2d 1004 (Haw. 1982)....................2

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006)....................11

*Videri, Inc. v. ONAWHIM (OAW) Inc.*,
No. 1:23-CV-2535-GHW, 2024 WL 4027980 (S.D.N.Y. Sept. 3, 2024)....................20

*Wade Park Land Holdings, LLC v. Kalikow*,
No. 21-CV-1657 (LJL), 2023 WL 2614243 (S.D.N.Y. Mar. 23, 2023)....................................3

*WorldCrisa Corp. v. Armstrong*,
129 F.3d 71 (2d Cir. 1997)....................................................................................11

**Statutes**

8 Del. C. § 321(b) ........................................................................................18

28 U.S.C. § 1391 .....................................................................................16, 17

28 U.S.C. § 1391(b) .......................................................................................17

Fla. Stat. § 48.081(4)(b)....................................................................................9

Fla. Stat. § 95.11(3)(i).....................................................................................21

Haw. Rev. Stat. § 657-1(4) ...............................................................................21

**Rules**

Fed. R. Civ. P. 4 ............................................................................................10

Fed. R. Civ. P. 4(h) ...........................................................................18, 19, 20

Fed. R. Civ. P. 4(h)(1)(B) ...........................................................................18, 19

Fed. R. Civ. P. 4(m) .......................................................................................19

Fed. R. Civ. P. 9(b) ........................................................................................21

Fed. R. Civ. P. 12(b) ........................................................................................9

Fed. R. Civ. P. 12(b)(1)................................................................................9, 12

Fed. R. Civ. P. 12(b)(2)....................................................................................18

Fed. R. Civ. P. 12(b)(3).............................................................................9, 16, 17

Fed. R. Civ. P. 12(b)(5).................................................................................10, 18

Fed. R. Civ. P. 12(b)(6).................................................................................10, 21

N.Y.C.P.L.R. § 213 .........................................................................................21

**Other Authorities**

District Court Fee Schedule and Related Information,
https://www.nysd.uscourts.gov/programs/fees ....................................................................15

Defendants VSE Pacific, Inc. ("**VSE**"), Vistana Vacation Ownership, Inc. ("**Vistana**"), Marriott Ownership Resorts, Inc. ("**MORI**"), and Marriott Vacation Worldwide Corporation ("**MVW**") (collectively "**Defendants**") by and through their undersigned counsel, Baker & Hostetler LLP, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Revised Claim of Jane Doe (Dkt. 20, hereinafter, the "**Amended Complaint**") and to Compel Arbitration.

## I. PRELIMINARY STATEMENT

Plaintiff seeks the Court's help to obviate her contractual obligations across two timeshare products by framing Defendants as having engaged in some sort of elaborate bait and switch that somehow resulted in, for example, her "inability to buy a home." (Dkt 20, at p. 3). The truth, however, quickly cuts through Plaintiff's colorful claims and distills this action down to an obvious reality: Plaintiff has buyer's remorse. Indeed, rather than meeting her basic requirements to plead with particularity and assert viable causes of action, Plaintiff spends much of the Amended Complaint describing her financial obligations under the timeshare contracts and the purported and resulting "impacts on [her] life." (Dkt. 20, at p. 3.) But Plaintiff's financial circumstances are not a harm proximately caused by any alleged action on the part of any Defendant—Plaintiff's claims are based on a purchase decision she willingly made eight years ago and a purchase decision she willingly chose to make again two years later.

Plaintiff's assertions are mitigated even further where her consistent use and enjoyment of these timeshare contracts for various vacations is brought to light, which Plaintiff herself admits. (Dkt. 30, at p. 7.) Because it does not suit her narrative, however, Plaintiff would have the Court disregard these facts. (*Id.*) Plaintiff would also have the Court turn a blind eye to the fact of Plaintiff's own responsibility for her financial health over the span of eight years, including other debts and obligations, such as student loan payments. (*Id.*) This is not how the law functions and

Plaintiff's desire to no longer be bound by these timeshare agreements is not enough to avoid her contractual obligations. The law is well-settled that "courts are not permitted to 'rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.'" *Ellenwood v. World Triathlon Corp.*, No. 8:20-CV-1182-T-60AEP, 2021 WL 62482 at *3 (M.D. Fla. Jan. 7, 2021) (quoting *Dear v. Q Club Hotel*, 933 F.3d 1286, 1297 (11th Cir. 2019)); *see also Strouss v. Simmons*, 66 Haw. 32, 40, 657 P.2d 1004, 1010 (Haw. 1982) ("It is the function of courts to construe and enforce contracts made by the parties, not to make or alter them.").

The Amended Complaint suffers from additional procedural and substantive defects which, on their own, require dismissal. *First*, New York is not the appropriate venue pursuant to the timeshare contracts, which are subject to the jurisdiction of the State and Federal Courts of Florida and Hawaii, respectively. *Second,* even if the Court were to hold that New York is the appropriate venue, the Court should dismiss the Amended Complaint and compel arbitration because the timeshare contracts' plain and unambiguous language subject Plaintiff's claims to mandatory arbitration. *Third*, irrespective of issues of jurisdiction and venue, Plaintiff fails to name the correct corporate entities and properly serve process on them. *Finally*, regardless of who the Plaintiff is suing or intends to sue, the Amended Complaint fails to state a cause of action, plead facts with the necessary level of particularity, and meet the applicable statute of limitations for the timeshare contracts subject to suit. For these reasons, the Amended Complaint should be dismissed.[1]

---

[1] Pursuant to the Court's Individual Practices in Civil Cases ("**Practice Rules**") Rule 4(L), Defendants recognize that the Court encourages oral argument for substantive motions, but Defendants respectfully request the Motion be adjudicated on the papers. Based on the record, Defendants believe that oral argument would not be productive nor assist the Court in rendering a decision on the Motion. Notably, Plaintiff has questioned the ethics of counsel for purportedly failing to negotiate a resolution of this action, for which Defendants are not obligated. (Dkt. 27, p. 3.)

## II. <u>STATEMENT OF FACTS</u>

Plaintiff purchased two timeshare interests, which are the subject of this litigation and described in further below. Neither Defendants Vistana or MVW are parties to any contract at issue in this case. Instead, however insufficient Plaintiff's claims may be, any cognizable claim would lie only as to VSE and MORI—the parties to the subject agreements.

### A. <u>Plaintiff's July 2017 Purchase of a Timeshare Interest and Subsequent Use</u>

Plaintiff entered into an agreement with VSE on July 6, 2017 to purchase a timeshare interest in the Nanea Ocean Villas Vacation Ownership Plan (the "**2017 Purchase**") in the amount of $57,019.00. In connection with the 2017 Purchase, Plaintiff and VSE executed a Purchase Agreement. A copy of the 2017 Purchase Agreement (the "**2017 Contract**") and is annexed to the Declaration of Michelle N. Tanney, dated September 24, 2025 (the "**Tanney Decl.**"), as **Exhibit 1**. *See Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657 (LJL), 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023) ("The Federal Rules of Civil Procedure have been interpreted to permit a defendant, in support of a motion to dismiss, to introduce a document that is central to the plaintiff's affirmative case or is referred to in the complaint but not attached to it, as well as documents of which judicial notice may be taken.").

As is relevant here, the 2017 Contract contains the following arbitration provision:

> **2. <u>Election of Arbitration; Administration by JAMS.</u>** Any dispute, controversy of claim ("Claim") between you and Seller, whether past, present or future, arising from or relating to this Agreement, the Plan, or the Project shall, at the election of either party, be arbitrated on an individual basis before JAMS pursuant to its Streamlined Rules. … A single neutral arbitrator hall be appointed. To start an arbitration proceeding, the complaining party files an arbitration Demand as explained in the JAMS Rules. If one party begins or threatens a lawsuit concerning a Claim, the other party can file a motion to compel arbitration with the court. If the court grants the motion, the Claim must be resolved in arbitration. If JAMS cannot serve and the parties cannot agree on a substitute, a court with jurisdiction will select the arbitrator.

> **3.** **<u>What Law Applies.</u>** The Federal Arbitration Act ("**FAA**"), 9 U.S.C. § 1, *et. seq.*, shall govern the interpretation and enforcement of this Provision. The arbitrator shall follow applicable substantive law consistent with the FAA, apply applicable statutes of limitations, honor valid claims of privilege, and issue a written reasoned decision (the "award"). The arbitrator may award all remedies that would apply in an individual court action (subject to constitutional limits that would apply in court). The award will be final and binding except for any appeal rights under the FAA. Appeal rights under the FAA are very limited.
>
> ***
>
> **6.** **<u>Examples of "Claims" Subject to Arbitration.</u>** The term "Claim" shall be broadly construed. It includes, without limitation, disputes concerning: purchase, financing, ownership or occupancy, breach , termination, cancellation or default; condition of the Project; the Vacation Ownership Interests; the Vistana Signature Network or other exchange programs; reservations, points or rewards programs; the Seller, Plan Manager, Managing Agent, or the Associations or related affiliated persons or entities; applications and personal information; marketing or sales solicitations, representations, advertisements, promotions or disclosures; and collection of delinquent amounts and the manner of collection. "Claim" includes disputes based upon contract, tort, consumer rights, fraud, and other intentional torts, constitution, statute, Uniform Commercial Code, regulation, ordinance, common law and equity.
>
> **7.** **<u>Disputes Not Covered by this Provision.</u>** The term "Claim" does <u>not</u> include: (i) disputes about the validity, enforceability, coverage or scope of this Provision or any part thereof, which are for a court to decide. But disputes about the validity or enforceability of any other parts of this Agreement, or this Agreement as a whole, are for the arbitrator to decide …

*See* 2017 Contract, at § 14(F). The 2017 Contract also provides:

> **H.** **<u>Legal Proceedings; No Jury Trial; Legal Fees.</u>** If (an only if) you reject the Arbitration Provision then the following provisions apply; Any lawsuit or legal proceeding relating o the Contract Documents, the Project of the Plan must be filed and conducted only in a federal or state court located in Hawaii. You promise to do nothing to deprive Hawaii courts of "jurisdiction" or "venue". This means that the lawsuit or proceedings will take place in Hawaii and you will not try to have them moved elsewhere. THE SELLER AND YOU GIVE UP RIGHT TO A JURY TRIAL AND AGREE THAT A JUDGE WILL DECIDE ANY DISPUTE. The losers must pay the winner's costs and expenses, including reasonable attorneys' fees.

*Id.* at § 14(H).[2] Hawaii law applies to disputes arising out of the 2017 Contract. *Id.* at § 14(E) ("Except for the Arbitration Provision, this Agreement shall be governed by, construed under, and enforced in accordance with the laws of the State of Hawaii.").

Since making the 2017 Purchase, Plaintiff has used her timeshare interest on multiple occasions—a fact she freely admits. (Dkt. 30, at p. 7.) Her usage history indicates she used points for "hotel stays, air miles, car rental certificates, cruises and resort stays at Marriott's Grande Vista and Marriott's Villas at Doral." (*Id.* at pp 7, 11–12.)

**B. <u>Plaintiff's August 2019 Purchase of a Timeshare Interest and Subsequent Use</u>**

Thereafter, on August 13, 2019, Plaintiff entered into a timeshare contract with MORI to purchase timeshare points in the MVC Trust in the amount of $28,845.00 (the "**2019 Purchase**"). In connection with the 2019 Purchase, Plaintiff executed a Contract for Purchase and an Addendum thereto. A copy of the 2019 Purchase Agreement (the "**2019 Contract,**" and together with the 2017 Contract, the **"Contracts"**) is annexed to the Tanney Decl. as **Exhibit 2**. As is relevant here, the 2019 Contract contained the following arbitration provision:

> **15. ARBITRATION.**
>
> (a) **Claims.** For purposes of this section ("Arbitration Provision"), "Claim" or "Claims" means any past, current or future claim, dispute or controversy of any type between the Parties and their respective Affiliates whether based on facts and circumstances that occurred prior to the effective date of this Contract or thereafter, including, but not limited to, disputes arising out of or relating to the interpretation, construction, validity, enforcement, or performance of this Contract or any other Governing Document, or the relationship resulting from this Contract, or any other Governing Document. … Claims include but are not limited to (1) initial claims, amended claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, common law and equity; and (3) claims based upon statutes or regulations, whether federal or state, including but not limited to ant consumer protection statutes. … Notwithstanding the foregoing, Claims shall not

[2] Plaintiff did not reject the Arbitration Provision pursuant to the procedure set out in Section 14(H)(10) of the 2017 Contract.

> include: (1) disputes relating to arbitrability or the validity, enforceability or scope of this Arbitration Provision ("**Excluded Arbitrability Disputes**") since the Parties agree that Excluded Arbitrability Disputes are to be resolved by a court ….
>
> * * *
>
> (d) **Election.** Any Party may elect to resolve any Claims by individual arbitration. Claims are decided by a neutral arbitrator. IF ARBITRATION IS CHOSEN BY ANY PARTY, NO PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, NONE OF THE PARTIES WILL HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. ARBITRATION PROCEDURES ARE GENERALLY SIMPLER THAN THE RULES THAT APPLY IN COURT, AND THE EXCHANGE OF INFORMATION BETWEEN THE PARTIES REFERRED TO AS DISCOVERY IS MORE LIMITED. THE ARBITRATOR'S DECISIONS ARE ENFORCEABLE AND ARE SUBJECT TO LIMITED REVIEW BY A COURT, EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS ANY PARTY WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

*See* 2019 Contract, at § 15. The 2019 Contract further provides,

> **16. VENUE AND JURISDICTION FOR COURT PROCEEDINGS.** If for any reason any dispute (including, but not limited to, Claims that the Parties choose not to arbitrate) proceeds in a court rather than through arbitration, it shall be brought exclusively in the federal and state courts located in Orange County, Florida. The Seller, Purchaser, or any other party claiming rights or obligations by, through, or under this Contract irrevocably and unconditionally consent to the exclusive jurisdiction of such courts and waive any claim or objection to the exclusive jurisdiction of such courts, including but not limited to objections based on lack of jurisdiction, improper venue, or *forum non conveniens*.
>
> **17. GOVERNING LAW.** This Contract shall be governed by Florida substantive law, except that the FAA (and not Florida arbitration law) shall apply to the fullest extent possible.

*See* 2019 Contract, at §§ 16–17.

Since making the 2019 Purchase, Plaintiff has frequently used her timeshare points to stay at various upscale resorts and to book rental cars and airline tickets. (Dkt. 30, at pp. 7, 11–12).

Nevertheless, Plaintiff—who has clearly enjoyed the multiple benefits of her timeshare purchases—maintains she is a victim of Defendants' purported deceptive and fraudulent tactics. But Plaintiff is nowhere near lacking in such sophistication; indeed, she has an MBA (Dkt. 1, p. 8) and has consulted with numerous attorneys regarding her claims (Dkt. 10, pp. 2-3) sufficient to bring and maintain her action since it was initiated in 2024. This is nothing more than Plaintiff wanting a way out of obligations she willingly entered into and has enjoyed many times over since her initial purchase eight years ago.

## III. PROCEDURAL HISTORY

Plaintiff initially commenced an action against "Marriott (Vistana, Sheraton, et al.)" and "Marriott Ownership Resorts P.O. Box 382028 Pittsburgh, PA 15251-8028" on October 22, 2024 with the filing of a letter to the "Judges at the Federal Court level" (Dkt. 1, hereinafter, the **"Initial Complaint"**). On March 31, 2025, the Court *sua sponte* extended Plaintiff's time to serve the Summons and Initial Complaint by May 2, 2025. (Dkt. 8.) On May 7, 2025 – after the Court's deadline – Plaintiff requested additional time to serve the Initial Complaint Defendants as she was still in the process of seeking counsel. (Dkt. 9.) On May 13, 2025, Plaintiff filed an alleged "Proof of Service" on the Initial Complaint Defendants (Dkt. 13) and informed the Court on June 6, 2025 that those defendants had been served. (Dkt. 14.) Contrary to Plaintiff's representations, a process server appears to have delivered a copy of the Initial Complaint, without Summons, to an individual working in an MVW office in Lakeland, Florida. (Dkt. 14; *see also* Dkt. 18, p. 3.) MVW was not a party to the Initial Complaint. The Initial Complaint was then mailed by MVW personnel in the Lakeland office to the Florida registered agent for MORI. (Dkt. 18, p. 3.)

Defendants appeared on June 18, 2025 (Dkt. 15), whereupon Defendants requested an extension of time to answer or otherwise appear in the action. (Dkt. 16.) The Court granted Defendants' request on June 20, 2025. (Dkt. 17.) On June 24, 2025, pursuant to the Court's Practice

Rule 4(C)(ii), Defendants sent correspondence by electronic mail and Federal Express to Plaintiff outlining the deficiencies in the Initial Complaint and the bases for dismissal of the action. By letter dated June 27, 2025, Plaintiff requested of the Court a thirty (30) day extension to amend her claims and annexed Defendants' June 24, 2025 correspondence. (Dkt. 18.) Plaintiff filed the operative complaint on July 25, 2025, this time against Defendants "Marriott Ownership Resorts, Inc.," "VSE Pacific, Inc.", and "Vistana Vacation Ownership Inc., Operating Under the Umbrella of Marriott Vacations Worldwide Corporation." (Dkt. 20.)

On August 8, 2025, and again pursuant to the Court's Practice Rule 4(C)(ii), Defendants sent Plaintiff correspondence by electronic mail and Federal Express outlining the deficiencies in the Amended Complaint and the bases for dismissal of the action. Plaintiff did not respond to Defendants' letter. On August 20, 2025, pursuant to the Court's Practice Rules 2(C) and 4(C)(iii), Defendants requested a Pre-Motion Conference and outlined the deficiencies in the Amended Complaint and the bases for dismissal of the action. (Dkt. 26.)

At the time Defendants filed their request for a Pre-Motion Conference, none of the Defendants had been served. In fact, to date, Plaintiff has failed to properly serve *any* of the named Defendants. First, the Clerk of Court has only issued Summons for Defendants VSE (Dkt. 24) and Vistana (Dkt. 25); no Summons have been issued for Defendants MORI and MVW. Second, the documents submitted by Plaintiff to the Court, in an attempt to prove service of process on the Defendants, include screenshots from the process server's website (Dkt. 27, at pp 22–24, 27–29) and proofs of service executed by the process servers (Dkt. 30, at pp 3–5), unequivocally demonstrate that none of the Defendants have been served. Indeed, the supposed proofs of service show that the parties served (or attempted to be served) were the Florida and Delaware Departments of State rather than Defendants' registered agents. Finally, while MORI's registered

agent was personally served with an incomplete copy of the Amended Complaint, the documents served were defective because they did not include a summons or any of the exhibits annexed to the Amended Complaint. A copy of the documents served on MORI's registered agent are annexed to the Tanney Decl. as **Exhibit 3.** Accordingly, almost a year after Plaintiff initiated this case, she still has not effectuated service on any Defendant and it is not Defendants' responsibility, contrary to Plaintiff's assertions, to direct her as to which parties to sue and how to properly serve them. (Dkt. 27, pp 2-3.)

## IV. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b) provides various grounds for dismissal of a complaint. As is relevant here, Rule 12(b)(1) provides that dismissal is warranted where the court lack subject matter jurisdiction. "Some courts in this District have held that the existence of an arbitration agreement requiring the plaintiff to submit her claims to arbitration deprives the Court of subject matter jurisdiction over the dispute." *Jordan-Rowell v. Fairway Supermarket*, No. 18CV01938 (VEC) (DF), 2019 WL 570709, at *7 (S.D.N.Y. Jan. 16, 2019), report and recommendation adopted, No. 18-CV-1938 (VEC), 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[O]n a Rule 12(b)(1) motion, a court should accept all material factual allegations in the complaint as true, the court is 'not to draw inferences from the complaint favorable to plaintiffs; on such a motion." *Jordan-Rowell*, No. 18CV01938 (VEC) (DF), 2019 WL 570709, at *7 (internal quotations omitted).

Additionally, on a motion to dismiss under Rule 12(b)(3) for improper venue, "the plaintiff bears the burden, but need only make a *prima facie* showing that venue is proper." *Dow Jones &*

*Co., Inc. v. Perplexity AI, Inc.*, No. 24 CIV. 7984 (KPF), 2025 WL 2416401, at *16 (S.D.N.Y. Aug. 21, 2025). "Whether venue is wrong or improper depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.* (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (internal quotations omitted)).

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look [ ] to matters outside the complaint to determine whether it has jurisdiction." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (internal quotations omitted). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Id.* (internal quotations omitted). The Court looks to Fed. R. Civ. P. 4, which governs proper service of process. *Id.* "[A] district court must grant a plaintiff an extension of time for service if the plaintiff demonstrates good cause." *Id.* "Good cause, or 'excusable neglect,' is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control." *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). "[D]elay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause." *Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432.

Finally, Rule 12(b)(6) requires dismissal where a plaintiff fails "to state a cause of action upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim for which relief can be granted, the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in favor of the Plaintiff, as the nonmoving party." *Roy v. Law Offices of B. Alan Seidler, P.C.*, 284 F. Supp. 3d 454, 456 (S.D.N.Y. 2018). "A court must determine whether a Complaint contains 'sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). While courts liberally construe submissions of *pro se* plaintiffs, "*pro se* status does not 'exempt a party from compliance with relevant rules of procedural and substantive law.' *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotations omitted)).

**B. <u>Motion to Compel Arbitration</u>**

The Federal Arbitration Act "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Due to the "strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Lok*, No. 21 CV 154 (NSR), 2022 WL 889215, at *1 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotations omitted).

"In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable to a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Lok*, No. 21 CV 154 (NSR), 2022 WL 889215, at *2 (quoting *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010)). Opposition to enforcement of the arbitration agreement "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 284 (S.D.N.Y. 2019) (quoting *Passero v. Ford*, No. 20-CV-05631 (PMH), 2021 WL 1299507, at *2 (S.D.N.Y. Apr. 7, 2021) (internal quotations omitted).

## V. LEGAL ARGUMENT

The Amended Complaint suffers from numerous procedural and substantive defects, all of which require dismissal. While some such defects are apparent on the face of the Amended Complaint, others arise pursuant to the subject Contracts themselves. Defendants begin with the procedural bases for dismissal.

### A. Plaintiff's Claims Are Subject to Mandatory Arbitration.

As an initial matter, this case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and arbitration must be compelled because Plaintiff's claims are subject to mandatory arbitration. Both Contracts require disputes arising from or related to each timeshare purchase be resolved exclusively through private arbitration at the election of either party. *See* 2017 Contract, at § 14(F); *see also* 2019 Contract, at § 15. Defendants informed Plaintiff of their election to arbitrate by letters dated June 24, 2025 and August 8, 2025, sent to Plaintiff in accordance with the Court's Practice Rule 4(C)(ii).

"When deciding whether to compel arbitration, courts consider whether (1) the parties agreed to arbitrate and (2) the arbitration agreement includes the disputed claim or claims." *See Lok v. Experian Info. Sols., Inc.*, No. 21 CV 154 (NSR), 2022 WL 889215, at *1 (S.D.N.Y. Mar. 25, 2022). "However, before reaching the second element, courts must determine who—the court or the arbitrator—properly decides the issue." *Passero v. Ford*, No. 20-CV-05631 (PMH), 2021 WL 1299507, at *3 (S.D.N.Y. Apr. 7, 2021) (internal quotations omitted). "[T]he question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Alcoa Corp. v. Anheuser-Busch InBev SA/NV*, No. 20-CV-3834, 2020 WL 5229706, at *2 (S.D.N.Y. Sept. 2, 2020) (internal citations and quotation marks omitted).

#### 1. The Parties Agreed to Arbitrate Plaintiff's Claims.

Here, it is undisputed that the Parties agreed to arbitrate at the election of either party. *See*

2017 Contract, at §14(F); 2019 Contract at § 15. While Plaintiff does not deny that she agreed to the binding arbitration provisions, she asks the Court to rule that "that [she is] not bound to arbitration due to the unconscionable nature of the agreements presented to [her], which were made under duress." Doc. No. 27, at p. 5. But Plaintiff fails to identify *anything* unconscionable about the Contracts or the arbitration provisions contained therein. Nor has Plaintiff made any factual allegations of duress, including the subsequent "**extreme** emotional distress" she has purportedly suffered. (Dkt. 27, p. 6 (emphasis in original).) The only allegations that Plaintiff makes as to unconscionability of the arbitration provisions are: (1) that the arbitration provisions are "one-sided nature and the manner in which [the arbitration provisions were] presented"; and (2) that she "didn't have an opportunity to read the documents, [she] signed a package of documents labeled where to sign. [She] was not aware [she] was signing an arbitration agreement, I was surrounded by managers and pressured to sign." Doc. No. 20, at p. 6.

"Under New York law, "[an arbitration] clause is unconscionable only if it is both procedurally and substantively unconscionable." *Billboard Media, LLC v. Wray*, No. 23 CIV. 7809 (AT) (SLC), 2024 WL 2941270, at *8 (S.D.N.Y. Apr. 25, 2024), report and recommendation adopted, No. 23 CIV. 7809 (AT) (SLC), 2024 WL 4299048 (S.D.N.Y. Sept. 25, 2024) (internal quotations omitted). Conclusory allegations are not sufficient to invalidate binding arbitration provisions. *Scott v. AAM Holding Corp.*, No. 23-CV-01909 (ALC), 2025 WL 1078302, at *2 (S.D.N.Y. Mar. 19, 2025) ("Second Circuit courts have … rejected efforts to escape arbitration based on similar 'conclusory assertions.'"). Here, Plaintiff does not allege that that she was prevented from reading the Contracts and her allegation that she signed a package of documents with labels noting where signatures are required does not amount to unconscionability. Instead, without alleging how or why, Plaintiff makes the conclusory statement that she felt pressure to

sign. The facts remain that Plaintiff was provided with the Contracts to read before signing, the arbitration provisions were in normal sized font, and with key portions printed in all capital or bold letters. *See* 2017 Contract, at § 14(F); 2019 Contract, at § 15. Plaintiff simply does not allege facts sufficient to show that the arbitration provisions were procedurally unconscionable. *See Scott v. AAM Holding Corp.*, No. 23-CV-01909 (ALC), 2025 WL 1078302, at *3 (S.D.N.Y. Mar. 19, 2025) (finding that plaintiff did not establish procedure unconscionability when plaintiff failed to cite to "sufficient facts showing the circumstances surrounding the absence of any bargaining at arm's length or that Plaintiffs could not consult counsel before signing the agreement."); *see also Reeves v. Safeguard Properties Mgmt., LLC*, No. 19-CV-10210 (VSB), 2021 WL 2403538, at *5 (S.D.N.Y. June 10, 2021) (finding that plaintiff did "not establish procedural unconscionability under either New York or Ohio law. Although [p]laintiff makes the conclusory statement that [d]efendants used 'high pressure tactics' to get him to sign the Agreement, [] he does not allege sufficient facts showing that the circumstances surrounding the contracting parties' bargaining created a lack of meaningful choice in support of this claim.").

Plaintiff also fails to identify any facts to establish that the arbitration provisions are substantively unconscionable. Here, the arbitration provisions give both parties the option to elect for arbitration of disputes. *See* 2017 Contract, at § 14(F)(2); *see also* 2019 Contract, at § 15(d). Moreover, the 2017 Contract contains a right to reject the arbitration provision within 30-days after execution of the agreement. *See* 2017 Contract, at § 14(F)(10). And with respect to costs, the 2017 Contract provides that Plaintiff only has to pay the first $250 in arbitration fees, with Defendants covering any arbitration fees over $250.[3] *See* 2017 Contract, § 14(F)(4). Similarly, the

[3] This is even less than it has cost Plaintiff to file the instant case in this Court. The current fee schedule for the Southern District of New York shows that the current cost to initiate a new action with the filing of a complaint is

2019 Contract requires Plaintiff to pay arbitration fees, but only up to the amount Plaintiff would have to pay to bring an action in Court, with Defendants paying any additional arbitration fees above that amount. *See* 2019 Contract, at § 15(h). Plaintiff simply has not and cannot point to any facts sufficient to find that the arbitration provisions in the Contracts are substantively unconscionable. *See Catz v. Precision Glob. Consulting*, No. 19 CIV. 7499 (ER), 2021 WL 1600097, at *6 (S.D.N.Y. Apr. 23, 2021) ("Under New York law, an arbitration provision that equally binds both parties to arbitration—as does the arbitration provision here—is not substantively unconscionable."). Accordingly, the arbitration provisions are enforceable, and the only question that remains is whether Plaintiff's disputes fall within the claims covered by the arbitration provisions.

**2. Plaintiff's Claims are Covered by the Arbitration Provisions.**

Here, the Parties agreed that the issue of arbitrability is to be decided by the Court. *See* 2017 Contract, § 14(F)(7); 2019 Contract, at § 15(a). The Contracts clearly and broadly define "Claims" to include "any past, current or future claim, dispute or controversy of any type between the Parties and their respective Affiliates whether based on facts and circumstances that occurred prior to the effective date of this Contract or thereafter, including, but not limited to, disputes arising out of or relating to the interpretation, construction, validity, enforcement, or performance of this Contract or any other Governing Document, or the relationship resulting from this Contract, or any other Governing Document." 2019 Contract, at § 15(a); *see also* 2017 Contract, at § 14(F)(6) (showing similarly broad definition of "Claims."). While it is difficult to discern Plaintiff's exact claims, the Amended Complaint seems to assert fraud claims and claims generally

$405. *See* District Court Fee Schedule and Related Information, *available at* https://www.nysd.uscourts.gov/programs/fees.

related to the validity and enforcement of the Contracts. But these claims, vague as they are, fall clearly within the broad definitions of "Claims" covered by the relevant arbitration provisions. Therefore, the Court should compel arbitration of this dispute and dismiss this case. *See Jordan-Rowell*, No. 18CV01938 (VEC) (DF), 2019 WL 570709 at *6 (dismissing plaintiff's case under 12(b)(1), when "there [was] no genuine dispute that Plaintiff agreed to submit to binding arbitration all [claims she was asserting in her complaint].").

**B. <u>The Amended Complaint Must Be Dismissed For Three Equally Fatal Procedural Reasons.</u>**

**1. Even If The Claims Were Not Subject To Mandatory Arbitration, The Southern District Of New York Is Not The Proper Venue.**

Beyond the threshold issue of jurisdiction, the Amended Complaint suffers from another procedural defect: New York is not the appropriate venue and is thus subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(3). The 2017 Contract provides for exclusive venue in the State or Federal Courts in Hawaii (*see* 2017 Contract, at ¶14(H)), and the 2019 Contract provides for exclusive venue in the State or Federal Courts in Orange County, Florida. *See* 2019 Contract, at ¶16.

Even without the forum selection clauses, federal law is clear that venue in this case is not proper in New York, 28 U.S.C. § 1391 provides:

> (b)Venue in General.—A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Plaintiff's own filings show that New York is not the appropriate venue. The Amended Complaint (1) provides addresses for the defendants, none of which are in New York;

(2) asserts "possible" violations of only Florida law and Hawaii law; and (3) lays out claims which purportedly arose in Florida and/or Hawaii. Additionally, in the Initial Complaint, Plaintiff conceded that "unfortunately the jurisdiction over this matter lies outside of New York, as Marriott's headquarters is in Florida." (Dkt. 1, p. 2.) The only thing tying this case to the current venue is Plaintiff's address, but venue is not determined by a plaintiff's residence. *See* 28 U.S.C. § 1391. Accordingly, the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(3) as New York is not the proper venue in which to litigate Plaintiff's claims.

To preempt these arguments, in her August 20, 2025 letter to the Court, Plaintiff asserts, "As I explained previously in the revised claim, [Defendants] marketed to me while I was residing in New York State, which gives our court jurisdiction over this case since they are operating in New York State." (Dkt. 27, p. 5.) Plaintiff makes no such allegation in the Amended Complaint. Plaintiff only asserts that she "received promotional mail from Marriott while residing in New York State." (Dkt. 27, p. 5.) She does not allege when the material was received, what this material was (including whether it was even related to the subject timeshare products), and from which Defendant entity it was circulated.

**2. Plaintiff Has Named Improper Parties In The Initial Complaint And The Amended Complaint.**

In the Amended Complaint, Plaintiff also amended the caption (*compare* Dkt. 1, the "**Initial Complaint**"; *with* Dkt. 20), and despite the pre-motion correspondence, continues to seek redress from entities unrelated to the alleged claims. Specifically, the Amended Complaint names "Vistana Vacation Ownership, Inc., Operating Under the Umbrella of Marriott Vacations Worldwide Corporation" as a defendant, but (1) it is unclear which entity Plaintiff seeks to name—

Vistana or MVW[4]—which are separate entities; and (2) as explained above, neither entity is actually a party to the Contracts. Plaintiff fails to even allege a basis for naming them in her lawsuit. (*See* Dkt. 20.) For this reason alone, Defendant(s), Vistana Vacation Ownership, Inc., Operating Under the Umbrella of Marriott Vacations Worldwide Corporation should be dismissed from this case.

**3. Plaintiff Has Not Properly Served Any Party With Process, Therefore, Dismissal is Warranted Under Rule 12(b)(5).**

Federal Rule of Civil Procedure 4(h) governs service on a corporation, partnership, or association. Rule 4(h) allows for service to be effectuated in any manner permitted for serving an individual, or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). While Plaintiff claims to have served Defendants through the Florida and Delaware Departments of State, her own filings show that what she actually did was serve the Florida and Delaware Departments of State as though those governmental entities were defendants in this case, they are not. (Dkt. 27, at p. 22–24, 27–29; Dkt. 30, at pp. 3–5.) Even if Plaintiff had attempted to serve the named Defendants through the Department of State in Florida and Delaware (she did not), such service would still be ineffective under Florida and Delaware law which only permit service in this manner under specific circumstances that are not present here, as all Defendants have registered agents. *See* Del. Code tit. 8, § 321(b) ("[i]n case the officer whose duty it is to serve legal process cannot by due diligence

[4] While it is unclear whether Plaintiff is attempting to sue MVW based on the pleadings, even if Plaintiff were to serve MVW, it is not subject to personal jurisdiction in New York and dismissal pursuant to Fed. R. Civ. P. 12(b)(2) would be warranted. MVW is a holding company that maintains no business operations at all, much less in New York. MVW is not registered or qualified to do business in New York.

serve the process in any manner provided for by subsection (a) of this section, it shall be lawful to serve the process against the corporation upon the Secretary of State); *see also* Fla. Stat. § 48.081(4)(b) ("[a]fter due diligence, service was attempted on at least one person listed publicly by the domestic corporation or registered foreign corporation on its latest annual report, as most recently amended, and cannot be completed on such person under subsection (3), the process may be served as provided in s. 48.161 on the Secretary of State as an agent of the domestic corporation . . . ."). Plaintiff did attempt to serve MORI's registered agent; however, MORI's registered agent was served incomplete process including a copy of the Amended Complaint without any of the exhibit annexed thereto and, more fundamentally, not including a summons. *See* Notice of Service attached to the Tanney Decl. as **Exhibit 3.**

Plaintiff will not be able to establish good cause for failure to properly serve any Defendant that she has named in this action. Indeed, Plaintiff initiated this action almost one year ago on October 22, 2024, and subsequently received multiple extensions of time to serve process, yet no Defendant has been properly served pursuant to Fed. R. Civ. P. 4(h)(1)(B). "Although *pro se* litigants are afforded a certain amount of leniency with respect to service of process, 'they are still required to attempt to comply with procedural rules, especially when they can be understood without legal training and experience.'" *Mensah v. Boeing Corp.*, No. 23-CV-2465 (JLC), 2023 WL 5739012, at *3 (S.D.N.Y. Sept. 6, 2023) (quoting *Jordan-Rowell*, No. 18-CV-1938 (VEC) (DF), 2019 WL 570709, at *5). Because no Defendant has been personally served, and Plaintiff cannot establish good cause for an extension of time to effectuate service on the Defendants, the Court lacks jurisdiction and the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 4(m). *See Jordan-Rowell*, 2019 WL 570709 at *6 (dismissing case pursuant to Fed. R. Civ. P. 4(m) because plaintiff could not establish that she properly served defendant's registered agent or

any one authorized to accept service as provided in Fed. R. Civ. P. 4(h)).

### C. Substantively, Plaintiff's Causes Of Action As Set Forth In The Amended Complaint Wholly Fail To State A Cause Of Action.

#### 1. Plaintiff's Hypothetical, "Possible" Causes Of Action Fail to State A Claim.

The Court should also dismiss the Amended Complaint on the substance. To start, the Amended Complaint fails to state a claim and operates only in hypotheticals—referring to "possible" causes of action, including "possible unconscionability," "possible violation of Hawaii Law (Title 28 § 514E)," and "possible violation of Florida Law (Title 40 § 721)." (Dkt. 20.) But Plaintiff fails to identify any specific statutory section that she alleges Defendants violated and instead refers generally to entire chapters of Hawaii and Florida law governing the administration of timeshares in those states. *Id.* The Amended Complaint simply fails to allege the necessary elements for any cause of action and fails to identify which causes of action are being brought against which Defendant. This is insufficient and warrants dismissal. *See Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 1:23-CV-2535-GHW, 2024 WL 4027980, at *17 (S.D.N.Y. Sept. 3, 2024) (dismissing conversion claims because "because they fail to allege conversion as more than a hypothetical.").

#### 2. Unconscionability Is Not A Cause Of Action Or A Legal Remedy.

Plaintiff also raises a nonexistent cause of action for "Possible Unconscionability." In both Hawaii and Florida, which govern the subject Contracts, unconscionability is neither a cause of action nor a legal remedy. *See Cannon v. US Bank, NA*, No. CIV. 11-00079 HG-BMK, 2011 WL 1637415 at *10 (D. Haw. Apr. 29, 2011) (unconscionability is an affirmative defense to contract enforcement, not a cause of action); *see also Simpson v. Specialized Loan Servicing*, LLC, No. 8:22-CV-892-CEH-SPF, 2023 WL 2599413, at *7 (M.D. Fla. Mar. 22, 2023) ("[p]laintiff fails to state a claim in this count because there is no cause of action for an unconscionable contract.").

Accordingly, any cause of action for unconscionability must be dismissed.

**3. Plaintiff's Fraud Allegations Are Not Pleaded With The Requisite Particularity.**

If, however, even under the most generous reading of the Amended Complaint it can be argued that Plaintiff alleges some kind of fraud, such claims still warrant dismissal. Claims sounding in fraud are required to be pleaded "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). At base, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kottler v. Deutsche Bank AG,* 607 F.Supp.2d 447, 462 (S.D.N.Y. 2009) (internal quotations omitted). In the case of multiple defendants, such as here, Rule 9(b) also requires that a plaintiff "allege facts specifying each defendant's contribution to the fraud." *Id.* (internal quotation omitted). Here, the Amended Complaint only makes general allegations about what "Defendants represent[ed]" without identifying (1) what statements were actually made, and (2) who made the statements (other than "sales agents"). *See* Amended Complaint at pp 4-5. Plaintiff fails to meet even the bare minimum of what is required of Fed. R. Civ. P. 9(b) therefore, any fraud-based claims should be dismissed pursuant to Fed. R. Civ. P. Rule 9(b) and 12(b)(6).

**4. Plaintiff's Fraud Claims Are Also Barred By The Applicable Statute Of Limitations.**

Finally, even if any fraud claims asserted by Plaintiff were properly pleaded—which they are not—they are barred by the applicable statutes of limitations. For the 2017 Contract, Hawaii law requires fraud-based claims to be asserted within six years of the alleged fraud. Haw. Rev. Stat. § 657-1(4). For the 2019 Contract, Florida law requires fraud-based claims to be asserted within four years. Fla. Stat. § 95.11(3)(i). Even if New York law applied, it does not pursuant to the choice of law provisions in the Contracts, any causes of action under the 2017 Contract would

still be barred by New York's six-year statute of limitations for fraud-based claims. N.Y.C.P.L.R. § 213. Because the Initial Complaint was not filed until October 22, 2024, any causes of action sounding in fraud are barred by the applicable Statute of Limitations and such claims must be dismissed.

**CONCLUSION**

For all the reasons set forth herein, Defendants respectfully request that the Revised Claim of Jane Doe be dismissed in its entirety or in the alternative that this Court issue an order compelling arbitration of Plaintiff's claims for all the reasons set forth herein; and granting all such other relief that is just and proper.

Date: New York, New York
September 24, 2025

By: */s/Michelle N. Tanney*
Michelle N. Tanney

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel.: (212) 589-4200
Fax: (212) 589-4201
mtanney@bakerlaw.com

*Attorneys for Defendants*

**CERTIFICATION OF WORD COUNT**

As required by Local Rule 7.1, I certify that this memorandum of law was prepared using Microsoft Word, and the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is 7,338 words.

Dated: New York, New York
September 24, 2025

**BAKER & HOSTETLER LLP**

By: *<u>/s/ Michelle N. Tanney</u>*

Michelle N. Tanney
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
mtanney@bakerlaw.com