**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

Plaintiff,

v.

MARRIOTT OWNERSHIP RESORTS, INC., VSE PACIFIC INC., and VISTANA VACATION OWNERSHIP, INC., OPERATING UNDER THE UMBRELLA OF MARRIOTT VACATIONS WORLDWIDE CORPORATION,

Defendants.

Case No. 24-cv-08027 (PMH)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE REVISED CLAIM OF JANE DOE AND TO COMPEL ARBITRATION

**BAKER & HOSTETLER LLP**
Michelle N. Tanney
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
mtanney@bakerlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....... 1

II. LEGAL ARGUMENT ....... 1

A. Plaintiff Makes No Allegations Concerning the Enforceability of the Arbitration Provision. ....... 2

B. Procedural Inadequacies Remain Unresolved. ....... 4

C. Substantively, Plaintiff's Claims Cannot Stand. ....... 5

D. Plaintiff's Claims for Fraud Must Be Dismissed. ....... 5

III. CONCLUSION ....... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....2

*Conte v. Kingston NH Operations LLC*,
585 F. Supp. 3d 218 (N.D.N.Y. 2022)....7

*Decker v. Massey-Ferguson, Ltd.*,
681 F.2d 111 (2d Cir. 1982)....8

*First Fed. Sav. & Loan Ass'n of Wisconsin v. Dade Fed. Sav. & Loan Ass'n*,
403 So. 2d 1097 (Fla. 5th DCA 1981)....7

*First Interstate Bank of Hawaii v. Hartley*,
681 F. Supp. 1457 (D. Haw. 1988)....6

*Jordan-Rowell v. Fairway Supermarket*,
No. 18CV01938 (VEC) (DF), 2019 WL 570709 (S.D.N.Y. Jan. 16, 2019), *report and recommendation adopted*, No. 18-CV-1938 (VEC), 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019)....4

*Ndoye v. City of New Rochelle*,
No. 23-CV-03805 (PMH), 2024 WL 308221 (S.D.N.Y. Jan. 26, 2024)....5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)....3

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....2, 3

**Statutes**

28 U.S.C. § 1391(b)....4

Fla. Stat. § 95.11(3)(i)....5

Fla. Stat. § 95.031(2)(a)....6

Fla. Stat. § 721.07(6)....7

Haw. Rev. Stat. § 657-1(4)....5

**Rules**

Fed. R. Civ. P. 4(m) ....................................................................................................4, 5

Fed. R. Civ. P. 9(b) ....................................................................................................7

Fed. R. Civ. P. 12(b)(1)....................................................................................................4

Fed. R. Civ. P. 12(b)(3)....................................................................................................4

Fed. R. Civ. P. 12(b)(5)....................................................................................................5

Defendants VSE Pacific, Inc. (“**VSE**”), Vistana Vacation Ownership, Inc. (“**Vistana**”), Marriott Ownership Resorts, Inc. (“**MORI**”), and Marriott Vacation Worldwide Corporation (“**MVW**”) (collectively “**Defendants**”)[1] respectfully submit this Memorandum of Law in Further Support of its Motion to Dismiss the Revised Claim of Jane Doe and to Compel Arbitration, and state and follows:

## I. PRELIMINARY STATEMENT

Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. 36, **“Plaintiff's Opp.”**) improperly attempts to cure the numerous defects in her pleading, including the argument that the Court must permit discovery on “threshold issues of formation, unconscionability, and fraud in the inducement” before it considers Defendants' Motion to Dismiss. No authority supports this position. First, these are not threshold issues; they are the substance of Plaintiff's claims against Defendants. Second, the law is clear that unsubstantiated allegations do not entitle Plaintiff to a fishing expedition in hopes of discovering the facts to support her claims. This argument notwithstanding, Plaintiff's Amended Complaint should still be dismissed based on a number of fatal flaws, including but not limited to, being subject to arbitration, being time-barred, and being insufficiently pleaded—much of which she failed to address, and therefore waived. More fundamentally, Plaintiff's claims cannot even pass basic procedural hurdles. Indeed, *more than a year after initiating this lawsuit, Plaintiff still has not properly served even one Defendant*. For the reasons argued in Defendants' Motion to Dismiss (**“Defs Mot.,”** Dkt. 32) and the further arguments herein, the Court should dismiss the Amended Complaint.

## II. LEGAL ARGUMENT

Nothing raised in Plaintiff's Opp. demonstrates that the financial harm she purportedly

[1] Unless otherwise defined herein, all defined terms in the Moving Brief (Dkt. 32) are incorporated herein.

suffered was proximately caused by Defendants' actions. The facts remain undisputed that Plaintiff purchased the first timeshare interest in July 2017, purchased the second timeshare interest in August 2019, and filed this suit in October 2024. *See* Dkt. 1. In other words, she was well-familiar with the financial responsibility and benefits of timeshare ownership for over two years when she purchased the second time share interest, but is now somehow before the Court—eight years later—claiming fraud. Meanwhile, throughout this time period, Plaintiff was—and admits to—enjoying the benefits of both timeshares, including for "hotel stays, air miles, car rental certificates, cruises and resort stays at Marriott's Grande Vista and Marriott's Villas at Doral." Dkt. 30, at pp. 7, 11–12. At the very least, this calls into question the seriousness of Plaintiff's claims and runs counter to her views on fairness and equity. The legal elements of her claims fare no better.

### A. **Plaintiff Makes No Allegations Concerning the Enforceability of the Arbitration Provision.**

Plaintiff's Opp. argues that before compelling arbitration, the Court must decide "threshold issues" of "formation of the contract," or whether "the arbitration clause itself was procured by fraud, coercion, or unconscionability." *See* Dkt. 36, at p. 3. Plaintiff is wrong. Under the terms of the Contracts and Federal Law (*including the case cited by Plaintiff herself*), such arguments are for the arbitrator to decide—not the Court.

In *Rent-A-Center*, the Supreme Court recognized that:

> There are two types of validity challenges under § 2 [of the FAA]: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). The Supreme Court has consistently held that "only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue

is enforceable." *Id.* With respect to the second type, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* Indeed, "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* at 71 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967)). Ultimately, in *Rent-A-Center*, the Supreme Court held that since there was no challenge to the arbitration provision specifically, "we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.

Here, the allegations in Plaintiff's Amended Complaint do not focus on the arbitration provisions at all, but rather only attack the Contracts as a whole. Specifically, Plaintiff makes a holistic assessment to allege that: (1) the arbitration provisions are "one-sided in nature" because generally speaking "such clauses often favor the company over the consumer and limited the consumer's ability to seek redress in a court of law"; and (2) she allegedly did not have sufficient time or space to read the contracts. *See* Dkt. 20, at p. 6. These allegations are not directed at the validity and enforceability *of these specific arbitration provisions*, but rather relate to the sales process and the Contracts as a whole. As such, this Court should not analyze the alleged threshold issues; instead, such analysis must be done by an arbitrator.

This legal premise is additionally confirmed in the Contracts, which provide that the while "disputes about the validity, enforceability, coverage or scope ***of this Provision or any part thereof***, … are for a court to decide", the Contracts make clear that "disputes about the validity or enforceability of any other parts of this Agreement, ***or this Agreement as a whole, are for the***

***arbitrator to decide***." *See* Dkt. 33-1, 2017 Contract, at § 14(F)(7) (emphasis added); *see also* Dkt. 33-2, 2019 Contract, at § 15(a) (including similar terms). Since Plaintiff's allegations relate to the Contracts as a whole, both the Contracts and the law require that these claims be arbitrated. While the Court should dismiss this case outright, it can also consider compelling arbitration pursuant to the valid and binding provisions Plaintiff willingly agreed to. *See Jordan-Rowell v. Fairway Supermarket*, No. 18CV01938 (VEC) (DF), 2019 WL 570709 (S.D.N.Y. Jan. 16, 2019), report and recommendation adopted, No. 18-CV-1938 (VEC), 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019) (dismissing plaintiff's case under Rule 12(b)(1), when "there [was] no genuine dispute that Plaintiff agreed to submit to binding arbitration all [claims she was asserting in her complaint].").

**B. <u>Procedural Inadequacies Remain Unresolved</u>.**

Plaintiff's Opp. also fails to address that New York is not the proper venue under the express terms of the Contracts and Federal Law. *See* Dkt. 33-1, 2017 Contract, at ¶14(H); Dkt. 33-2, 2019 Contract, at ¶16; 28 U.S.C. § 1391(b). Therefore, Plaintiff has conceded that venue is inappropriate in the Southern District of New York, warranting dismissal under Fed. R. Civ. P. 12(b)(3).

Second, even now, more than a year since Plaintiff initiated this claim, she still has not properly served any named Defendant with process. Fed. R. Civ. P. 4(m) provides Plaintiff 90 days from the filing of a complaint to effectuate service of process on a defendant and only permits an extension of time upon a showing of good cause. While Plaintiff's Opp. requests additional leave to cure her deficient attempts at serving the Defendants, she does not establish good cause for this failure or even attempt to explain why she has failed to serve anyone for over a year. Plaintiff's Response also asks the Court to allow her to serve Defendants through counsel (Dkt. 36, at p. 3), but the Court denied this request, which was made again by Plaintiff under separate cover. *See*

Dkt. 38. Simply put, Plaintiff's time to properly effectuate service is up, requiring dismissal under Fed. R. Civ. P. 4(m) and 12(b)(5).

**C. <u>Substantively, Plaintiff's Claims Cannot Stand</u>.**

Plaintiff's Opp. merely reiterates her allegations in the Amended Complaint and conclusory asserts that these allegations are sufficiently pleaded claims. Dkt. 36, at p. 2–3. But, as pointed out in Defs Mot., many of Plaintiff's claims are cast as "possible" violations of law without identifying any statutory source and speak in vague generalities about her thoughts on the timeshare industry. *See* Dkt. 32, at p. 20. Plaintiff's Response does not address this issue; accordingly, she has conceded this argument and all "possible" causes of action pleaded in the Amended Complaint should be dismissed.

Additionally, Plaintiff attempts to: (1) seek relief for the public, generally (Dkt. 36, at p. 4); and (2) to inject "evidence" of anonymized online complaints from other supposed timeshare owners, including owners of other properties (Dkt. 39). Such arguments and submissions go well outside the pleadings and should be disregarded by the Court. *Ndoye v. City of New Rochelle*, No. 23-CV-03805 (PMH), 2024 WL 308221, at *4 (S.D.N.Y. Jan. 26, 2024) (declining to consider argument that "invokes facts outside the four corners of the Complaint….").

**D. <u>Plaintiff's Claims for Fraud Must Be Dismissed</u>.**

The actual substance of the Amended Complaint fares no better and equally warrants dismissal.

As an initial matter, Plaintiff's fraud claims are barred by the applicable statutes of limitations. *See* Defs Mot., at pp. 21–22. Hawaii law, which governs the 2017 Contract, requires fraud-based claims to be asserted within six (6) years of the alleged fraud. Haw. Rev. Stat. § 657-1(4). Florida law which governs the 2019 Contract requires fraud-based claims to be asserted within four (4) years. Fla. Stat. § 95.11(3)(i). In response, Plaintiff argues that these statutes have

not expired because she has ongoing financial obligations pursuant to the Contracts (Dkt. 36, at p. 3), but that is not relevant. In Florida, "[a]n action founded upon fraud under s. 95.11(3), … must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a); *see also First Interstate Bank of Hawaii v. Hartley*, 681 F. Supp. 1457, 1460 (D. Haw. 1988)"(Claims for fraud, whether based on state or federal law, arise when the fraud is or should have been discovered.") (applying Hawaii law).

For numerous reasons argued herein, Plaintiff cannot possibly argue that she suddenly realized she was somehow allegedly defrauded, but even more, she was provided with copies of her Contracts and other related documents at the time of each purchase, which contain all the information about these purchases. In other words, Plaintiff, who by no means is unsophisticated, was provided with the documents and information outlining her financial obligations and benefits, including her responsibilities and Defendants' responsibilities. In the event Plaintiff was actually defrauded pursuant to contract, which she was not of course, she has been in possession of those instruments since 2017.

Plaintiff was also provided with documentation that made clear that the purchases were for a quantifiable amount of points. *See* Dkt. 33-1, 2017 Contract, at Exh. A (showing that Plaintiff is purchasing a timeshare interest of 148,100 points); Dkt. 33-2, 2019 Contract, at p. 1 (showing that Plaintiff is purchasing nine timeshare interests, each interest is 2,250 points). The 2017 Contract also directs Plaintiff to a list of all "Important Documents" and provides that "[y]ou should carefully consider reading all of the various legal documents before your seven-day right to cancel ends because by signing this Agreement, you accept and approve those documents, including among other things, the rights that they give to the Seller and to the Associations." Dkt. 33-1, 2017

Contract, at pp. 2, 8 (explaining the seven-day period within which Plaintiff could have rescinded the 2017 Contract). The 2019 Contract similarly provides, "You may cancel this Contract without any penalty or obligation within 10 (ten) calendar days after the date you sign this Contract or the date on which you receive the last of all documents required to be given to you pursuant to Section 721.07(6), Florida Statutes, whichever is later." Dkt. 33-2, 2019 Contract, at p. 2.

Put simply, the statute of limitations began to accrue when Plaintiff received all necessary and correct information about the nature of her purchases at the time of each sale and was charged with knowledge of these documents. *First Fed. Sav. & Loan Ass'n of Wisconsin v. Dade Fed. Sav. & Loan Ass'n*, 403 So. 2d 1097, 1100 (Fla. 5th DCA 1981) ("under Florida law, a party is charged with knowledge of facts which would have been discovered in the exercise of due diligence for purposes of determining when a cause of action for fraud accrues."). Accordingly, Plaintiff's claims are time barred.

Second, even if Plaintiff's claims were not time barred (they are), they nevertheless must be dismissed because the allegations are not pleaded with the requisite level of particularity as required by Fed. R. Civ. P. 9(b). Plaintiff's Opp. does nothing more than reiterate her vague and insufficient allegations and ask for discovery to support same, of course her inadequate pleading would not be saved by the improper discovery she seeks. *See* Dkt. 36, at pp. 1, 3.

"[D]istrict courts have recognized, in the absence of reliable allegations indicating that particulars of fraudulent claims exist ... [plaintiffs are] not entitled to receive a ticket to the discovery process in order to meet [Fed R. Civ. P.] 9(b)'s particularity requirement." *See Conte v. Kingston NH Operations LLC*, 585 F. Supp. 3d 218, 238 (N.D.N.Y. 2022) (internal quotations omitted). The Second Circuit has recognized that "Rule 9(b) will have failed in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive

discovery process in the hope of uncovering some sort of wrongdoing or of obtaining a substantial settlement." *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982). Plaintiff's fraud claims must be dismissed for failure to plead particularized allegations of fraud.

## III. CONCLUSION

For all the reasons set forth in Defendants' Motion to Dismiss and herein, Defendants respectfully request that the Revised Claim of Jane Doe be dismissed in its entirety, or, in the alternative, that this Court issue an order compelling arbitration of Plaintiff's claims for all the reasons set forth herein; and granting all such other relief that is just and proper.

Date: New York, New York
November 7, 2025

By: */s/ Michelle N. Tanney*
Michelle N. Tanney

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Tel.: (212) 589-4200
Fax: (212) 589-4201
mtanney@bakerlaw.com

*Attorneys for Defendants*

## CERTIFICATION OF WORD COUNT

As required by Local Rule 7.1, I certify that this memorandum of law was prepared using Microsoft Word, and the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is 2,414 words.

Dated: New York, New York
November 7, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Michelle N. Tanney*

Michelle N. Tanney
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
mtanney@bakerlaw.com