UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                    Plaintiff,

          -v-

MARRIOTT OWNERSHIP RESORTS, INC., et al.,

                    Defendants.

**OPINION AND ORDER**

24-CV-08027 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jane Doe ("Plaintiff"), proceeding *pro se*, commenced this action on October 22, 2024. (Doc. 1). Plaintiff, upon receiving leave of Court, amended her complaint on July 25, 2025, pressing claims against Marriott Ownership Resorts, Inc. ("Marriott"), VSE Pacific Inc. ("VSE") and Vistana Vacation Ownership, Inc. ("Vistana," and together, "Defendants"). (Doc. 20, "AC" at 2-8).[1] Before the Court is Defendants' motion to: (i) compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and (ii) dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(5), and 12(b)(6).[2] Defendants filed their motion on September 24, 2025. (Doc. 31; Doc. 32, "Def. Br."; Doc. 33, "Tanney Decl."). Plaintiff filed opposition on

---

[1] Unless otherwise indicated and for ease of reference, citations to filings on the docket correspond to the page numbers assigned by ECF.

[2] Local Rule 7.1(a)(1) provides that "[a] notice of motion . . . shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion." Defendants' Notice of Motion fails to cite to any Federal Rule of Civil Procedure, as it indicates only that Defendants move "for an Order granting Defendant's [sic] Motion to Dismiss the Revised Claim of Jane Doe and to Compel Arbitration in the above captioned case." (Doc. 31). While failure to comply with the Local Rules, is, on its own, a sufficient ground to warrant denial of a motion, the Court has discretion to overlook a failure to comply with Local Rule 7.1 and exercises such discretion on this motion, as the parties have fully briefed the issue as both a motion to compel arbitration under the FAA, and as a motion to dismiss under Rules 12(b)(1), 12(b)(3), 12(b)(5), and 12(b)(6). *See Singer v. Massachusetts Mut. Life Ins. Co.*, No. 21-CV-08450, 2023 WL 3506404, at *1 (S.D.N.Y. May 17, 2023), *aff'd*, No. 23-0863, 2024 WL 1172893 (2d Cir. Mar. 19, 2024).

October 3, 2025. (Doc. 36, "Pl. Br."). Defendants filed reply on November 7, 2025. (Doc. 40, "Reply").[3]

For the reasons set forth below, Defendants' motion to compel arbitration is GRANTED and Defendants' motion is otherwise DENIED.

## BACKGROUND

Plaintiff, in or about 2017 and 2019, entered into two agreements with Defendants, after sitting in on sales presentations and "high-pressure sales meetings" each of which lasted approximately "60-90 minutes." (AC at 2). The first agreement, entered in July 2017 between Plaintiff and Defendants VSE Pacific, Inc. and Vistana Vacation Ownership, Inc.,[4] concerns a Vacation Ownership Interest in a property located in Hawaii (the "2017 Hawaii Timeshare Agreement"). (*Id.*; Doc. 33-1).[5] Two years later, in or about late 2019, Plaintiff entered into another agreement, between Plaintiff and Marriott Ownership Resorts, Inc., concerning a timeshare interest in a property located in Florida (the "2019 Florida Timeshare Agreement" and, together with the 2017 Hawaii Timeshare Agreement, the "Agreements"). (AC at 2; Doc. 33-2).

Both Agreements include arbitration provisions, with relevant portions of each detailed below.

---

[3] Plaintiff filed multiple additional "Letter[s]" and a "Notice to the Court," without leave of the Court. (Docs. 39, 41, 42). However, considering Plaintiff's *pro se* status and Defendants' lack of objection to such filings, the Court will consider these filings as supplementing Plaintiff's opposition to Defendants' motion, and will consider the arguments contained therein, to the extent properly made. *Nationstar Mortgage LLC v. Hunte*, No. 16-CV-08708, 2020 WL 2836431, at *2 n.5 (S.D.N.Y. June 1, 2020).

[4] Defendants claim that Defendant Vistana Vacation Ownership, Inc. is not a party to this contract and thus should be dismissed. (Def. Br. at 18). As detailed *infra*, the Court declines to reach this argument in light of the holding on Defendants' motion to compel arbitration.

[5] Defendants attach the two timeshare agreements to the Tanney Declaration. (*See* Docs. 33-1 and 33-2). The Court may, and does, consider these documents in analyzing Defendants' motion to compel arbitration. *See Cornelius v. Wells Fargo Bank, N.A.*, No. 19-CV-11043, 2020 WL 1809324, at *4 (S.D.N.Y. Apr. 8, 2020).

I.      The 2017 Hawaii Timeshare Agreement

The 2017 Hawaii Timeshare Agreement includes an arbitration provision, which provides, in pertinent part, as follows:

> Any dispute, controversy or claim ("Claim") between you and Seller, whether past, present or future, arising from or relating to this Agreement, the Plan, or the Project shall, at the election of either party, be arbitrated on an individual basis before JAMS pursuant to its Streamlined Rules . . . . If one party begins or threatens a lawsuit concerning a Claim, the other party can file a motion to compel arbitration with the court. If the court grants the motion, the Claim must be resolved in arbitration . . . . The term "Claim" shall be broadly construed . . . [and] includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, Uniform Commercial Code, regulation, ordinance, common law and equity.

(Doc. 33-1 at 7).

The 2017 Hawaii Timeshare Agreement also states that Plaintiff may reject the Arbitration Provision, by sending "Seller" a signed "rejection notice" "within thirty (30) days after the date of this Agreement." (*Id.* at 8).

II.     The 2019 Florida Timeshare Agreement

The 2019 Florida Timeshare Agreement also includes an arbitration provision, which provides, in pertinent part, as follows:

> "Claim" or "Claims" means any past, current or future claim, dispute or controversy of any type between the Parties and their respective Affiliates whether based on facts and circumstances that occurred prior to the effective date of this Contract or thereafter, including, but not limited to, disputes arising out of or relating to the interpretation, construction, validity, enforcement, or performance of this Contract or any other Governing Document, or the relationship resulting from this Contract, or any other Governing Document . . . . Any party may elect to resolve any Claims by individual arbitration . . . . Any party may otherwise elect to arbitrate any Claim at any time unless both (i) it has been filed in Court and (ii) trial has begun or final judgment has been entered.

3

(Doc. 33-2 at 5-6).

III.    Plaintiff's Alleged Claims and Injuries

Plaintiff complains that Defendants led her to believe that the investments were "legitimate" and came with "tax benefits." (AC at 2). Plaintiff alleges, however, that upon entering into the Agreements and after conducting subsequent research, she realized that the timeshares could not be sold for any "reasonable value." (*Id.*). Plaintiff therefore commenced the instant action alleging claims of: i) unconscionability; ii) "possible" violations of Hawaii and Florida law related to the sale of timeshares; and iii) fraud. (*Id.* at 4). Plaintiff requests judicial relief to "assist . . . in exiting these contracts." (*Id.* at 6-7). Defendants now move to compel arbitration and dismiss this action.

**STANDARD OF REVIEW[6]**

Under the FAA, "[i]n deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable to a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).[7]

---

[6] "[A] district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). Additionally, even where a motion "presents a 'threshold' issue that 'ordinarily must precede merits determinations in dispositional order,' a court has 'leeway' to choose among multiple 'threshold grounds for denying audience to a case on the merits.'" *Sound Around, Inc. v. Anhui Light Indus. Int'l Co., Ltd.*, No. 25-CV-02877, 2025 WL 3484829, at *4 n.2 (S.D.N.Y. Dec. 4, 2025) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). Accordingly, as an initial matter, the Court utilizes such "leeway" to analyze Defendants' motion to compel arbitration first, and granting such motion, need not reach any of Defendants' arguments for dismissal. *Id.*

[7] Defendants maintain that in compelling arbitration the Court should conduct its analysis pursuant to Rule 12(b)(1) for lack of jurisdiction. (Def. Br. at 16; Reply at 4). However, it is well-settled that while a "motion to compel arbitration goes to the Court's power to hear a case . . . section 4 of the FAA, and not Rule 12(b) is the procedurally proper framework under which to evaluate such a motion." *Moody v. Starbucks Corp.*, No. 25-CV-08739, 2026 WL 146404, at *4 n.6 (S.D.N.Y. Jan. 20, 2026) (citing *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246 n.2 (E.D.N.Y. 2016)). Accordingly, the Court conducts the analysis of Defendants' motion to compel arbitration under the FAA.

"As on a motion for summary judgment, the parties may submit documents in support or opposition of their motion, and the court 'consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party.'" *Cornelius*, 2020 WL 1809324, at \*4 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).[8]

"If the party seeking arbitration demonstrates its entitlement to arbitration by a showing of evidentiary facts, the burden then shifts to the opposing party to submit evidentiary facts demonstrating there is a dispute of fact showing that the agreement is inapplicable or invalid." *Id.*; *see also Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 284 (S.D.N.Y. 2019) ("[T]he 'party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010))). Opposition "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Citadel Servicing Corp.*, 431 F. Supp. 3d at 284 (quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). "'If undisputed facts in the record require[] the issue of arbitrability to be resolved against the [p]laintiff as a matter of law,' then a district court must compel arbitration." *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) (quoting *Bensadoun*, 316 F.3d at 175); *see also Klein v. Experian Info. Sols., Inc.*, No. 19-CV-11156, 2020 WL 6365766, at \*3 (S.D.N.Y. Oct. 29, 2020).

The FAA provides in pertinent part:

---

[8] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "This provision establishes 'a liberal federal policy favoring arbitration agreements,'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and "reflects the overarching principle that arbitration is a matter of contract," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). *See also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2013) (explaining that the FAA "requires courts to enforce the bargain of the parties to arbitrate"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (noting that "courts must place arbitration agreements on an equal footing with other contracts"); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (observing that the FAA "places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms"); *Safra Secs., LLC v. Gonzalez*, 764 F. App'x 125, 125 (2d Cir. 2019) ("Whether parties have agreed to arbitrate a matter is fundamentally a question of contractual interpretation.").

Where, as here, the "dispute essentially concerns a [q]uestion[] of arbitrability, which is a term of art covering disputes about whether the parties are bound by a given arbitration clause, as well as disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," courts in the Second Circuit apply a "two-part test." *Ostreicher v. TransUnion, LLC*, No. 19-CV-08174, 2020 WL 3414633, at *5 (S.D.N.Y. June 22, 2020). Under this test, the Court "must consider (1) whether [the parties] 'have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement.'" *Scott v. JPMorgan Chase & Co.*, 603 F. App'x 33, 35 (2d Cir. 2015) (quoting *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)). However, before reaching

6

the second element, courts must "determine who—the court or the arbitrator—properly decides th[at] issue." *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d at 128 (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011)). "[T]he question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Alcoa Corp. v. Anheuser-Busch InBev SA/NV*, No. 20-CV-03834, 2020 WL 5229706, at *2 (S.D.N.Y. Sept. 2, 2020).

## ANALYSIS

### I.    Motion to Compel Arbitration

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman*, 49 F.4th at 101–02. Plaintiff does not dispute that she entered into both the 2017 Hawaii Timeshare Agreement and 2019 Florida Timeshare Agreement (AC at 2), or that Defendants provided notice of their election to arbitrate (Def. Br. at 19). Plaintiff does, however, appear to argue that the agreements at issue are unconscionable as a whole and thus invalid, while also stating, in a conclusory fashion, that the "arbitration clause itself is unconscionable due to its one-sided nature and the manner in which it was presented." (AC at 4, 6; Pl. Br. at 3). Defendants argue that the issue of unconscionability, as presented by Plaintiff, must be determined in the first instance by the arbitrator, and not the Court. Thus, the Court analyzes first "whether the parties have entered into a valid agreement to arbitrate" *Scott*, 603 F. App'x at 35, and upon analysis, determines they have.

### A.  Validity of the Agreements

The Court first considers whether "the parties have entered into a valid agreement to arbitrate," *Behrens*, 2024 WL 1090856, at *3, applying state contract law, and notes that "generally applicable contract defenses, such as fraud, duress, or unconscionability," may provide the means

7

to invalidate such an agreement, *see Kim v. Evergreen Adult Day Care in NY Inc.*, No. 22-CV-00548, 2024 WL 989909, at *3 (S.D.N.Y. March 6, 2024).[9] Plaintiff argues, relying on the Supreme Court's decision in *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010), that the question of the validity of the arbitration provision itself is a question for the Court to decide, rather than the arbitrator, as Plaintiff challenges the validity of the arbitration provision specifically. (Pl. Br. at 3). Defendants disagree. (Reply at 6-8).

While Plaintiff's argued premise above is generally correct, the application of *Rent-A-Center*, here, requires the opposite outcome. There are two types of validity challenges under Section 2 of the FAA: i) "one type [that] challenges specifically the validity of the agreement to arbitrate"; and ii) "the other challenges the contract as a whole, [relevant here,] on a ground that directly affects the entire agreement." *Johnson v. Costar Group Inc.*, No. 13-CV-08600, 2014 WL 3631630, at *3 (S.D.N.Y. July 21, 2014) (first citing *Rent-A-Ctr.*, 561 U.S. at 70; then quoting *Buckeye Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). The former challenge requires the Court's intervention, but the latter, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 444.

---

[9] The 2017 Hawaii Timeshare Agreement contemplates the application of Hawaii law, "[e]xcept for the Arbitration Provision" (Doc. 33-1 at 7), and the 2019 Florida Timeshare Agreement states that the "Contract shall be governed by Florida substantive law, except that the FAA (and not Florida arbitration law) shall apply to the fullest extent possible" (Doc. 33-2 at 6). Despite this, the Parties do not dispute the application of New York law as to both agreements, and therefore the Court applies New York contract law, as the Court "need not undertake a choice of law analysis *sua sponte* where parties apply the law of one state and do not dispute application of that state's law." *120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co.*, No. 08-CV-06491, 2013 WL 12331487, at *5 n.4 (S.D.N.Y. Sept. 25, 2013); *see also Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (applying New York law where the parties' "briefs assume that New York law controls," which is "sufficient to establish choice of law."). In any event, the Court notes, without holding, that contract law does not differ substantively between the states of New York, Hawaii, and Florida. *See Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 73-74 (S.D.N.Y. 2012) (analyzing a contractual provision under both Florida and New York law); *see also First Ins. Co. of Hawaii, Ltd. v. Continental Ins. Co.*, No. 23-00198, 2023 WL 7166245, at *4 (D. Haw. Oct. 31, 2023) (applying either Hawaii or New York law, the "applicable contract principles" are "largely the same" under either state's contract law).

Plaintiff argues, in sum, that she: i) "didn't have an opportunity to read the documents;" ii) "signed a package of documents labeled where to sign"; and iii) blames the "high-pressure sales tactics and the absence of meaningful opportunity for representation when the contracts were executed." (AC at 6; Pl. Br. at 3). Though Plaintiff states that she "dispute[s] the conscionability of the arbitration clause included in the contract," the reasoning Plaintiff relies upon for the alleged "unconscionability" applies in "equal force to all provisions contained" within the Agreements at issue, therefore constituting a validity argument as to the "contract as a whole." That argument requires this challenge be referred to the arbitrator. *See Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482-83 (2d Cir. 2011) (referring to the arbitrator the analysis of procedural unconscionability where the plaintiff argued that the agreement is invalid because defendant "forced him to choose between signing it or losing his job"); s*ee also Johnson*, 2014 WL 3631630, at *4 (finding that "[t]he argument that [plaintiff] did not have enough time to review the offer package or to seek assistance of counsel" was properly referred to the arbitrator to decide, not the court, as it "applied in equal force to all provisions").[10]

Accordingly, the Court must treat the arbitration provision as valid and refer Plaintiff's "unconscionability" arguments to the arbitrator in the first instance.[11] The Court, finding that the Parties have entered into a valid agreement to arbitrate, must then determine whether the issue of arbitrability is for this Court to decide. *See Alcoa Corp.*, 2020 WL 5229706, at *2. Finally and assuming the Court finds in favor of arbitrability, the Court considers whether Plaintiff's claims properly fall within the scope of the Arbitration Agreement. *Scott*, 603 F. App'x at 35.

---

[10] Additionally, the Court notes that the 2017 Hawaii Timeshare Agreement explicitly states that "disputes about the validity or enforceability of any other parts of this Agreement, or this Agreement as a whole, are for the arbitrator to decide." (Doc. 33-1 at 7).

[11] As discussed *infra*, the Court notes that the arbitration provisions at issue in this matter are broad, and certainly expansive enough to include Plaintiff's challenge to the validity of the agreements as a whole. (*See infra* at 10-11; *see also Johnson*, 2014 WL 3631630, at *4).

B.  Court Determines the Issue of Arbitrability

As an initial matter, both the 2017 Hawaii Timeshare Agreement and 2019 Florida Timeshare Agreement expressly delegate the issue of arbitrability to the Court. (*See* Doc. 33-1 ("'Claim' does not include: i) disputes about the validity, enforceability, coverage or scope of th[e] [Arbitration] Provision or any part thereof, which are for a court to decide."); Doc. 33-2 ("Claims shall not include (1) disputes relating to arbitrability or the validity, enforceability or scope of this Arbitration Provision ('Excluded Arbitrability Disputes') since the Parties agree that Excluded Arbitrability Disputes are to be resolved by a court.")). Accordingly, the Court may properly determine whether Plaintiff's claims fall within the scope of the respective arbitration provisions. *Alcoa Corp.*, 2020 WL 5229706, at *2.

C.  Scope of the Arbitration Agreement

Plaintiff does not appear to dispute that her claims fall within the scope of the arbitration provisions. Defendants, on the other hand, argue that Plaintiff's claims fall "clearly" within their scope (Def. Br. at 23-24), and the Court agrees. "To determine if a dispute falls within the scope of an arbitration agreement, a court should classify the particular clause as either broad or narrow," and when the clause is "broad, there arises a presumption of arbitrability." *Ostreicher*, 2020 WL 3414633, at *7-8.

The arbitration provisions at issue here both may plainly be defined as "broad," as the 2017 Hawaii Timeshare Agreement and 2019 Florida Timeshare Agreement respectively define "Claims" as "[a]ny dispute, controversy or claim . . . between you and Seller, whether past, present or future, arising from or relating to this Agreement," (Doc. 33-1 at 7), and "any past, current or future claim, dispute or controversy of any type between the Parties and their respective Affiliates whether based on facts and circumstances that occurred prior to the effective date of this Contract

10

or thereafter . . . ." (Doc. 33-2 at 5). *See Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F. 3d 16, 20 (2d Cir. 1995) (holding that an arbitration clause that includes "any claim or controversy arising out of or relating to the agreement," is the "paradigm of a broad clause."). Accordingly, Plaintiff's claims, based in fraud, unconscionability, and the alleged violations of state law relating to the sale of timeshares (AC at 4), all plainly "aris[e] from or relat[e] to" the Agreements, and therefore fall within the scope of the arbitration provisions.

Accordingly, Plaintiff's claims are all subject to the arbitration provisions set forth in the Agreements, and thus, Defendants' motion to compel arbitration is granted.[12]

II.    Staying the Action Pending Arbitration

Defendants argue that the Court should "dismiss this case outright" as opposed to imposing a stay pending the completion of arbitration, relying on a single 2019 case from the Southern District of New York for this premise. (Def. Br. at 9; Reply at 4 (citing *Jordan-Rowell v. Fairway Supermarket*, No. 18-CV-01938, 2019 WL 570709 (S.D.N.Y. Jan. 16, 2019)).

The Second Circuit, as well as the Supreme Court, however, have made clear that an action is properly stayed, rather than dismissed, pending arbitration, where a "district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration," as "§ 3 of the FAA compels the court to stay the proceeding." *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). While neither party here has explicitly requested a stay, the Court nevertheless retains discretion to issue a stay and does so here. *See Alfonso*, 203 F. Supp. 3d at 253 (citing *Katz* for the premise that despite no party expressly requesting a stay, such relief is "consistent with the FAA's underlying policy to move

---

[12] In light of the conclusions reached herein, the Court need not and does not reach the balance of Defendants' arguments for dismissal. (Def. Br. at 16-22; Reply at 4-8).

the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible and to enable parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation"); *see also Golightly v. Uber Technologies, Inc.*, No. 21-CV-03005, 2022 WL 22964674, at *14 (S.D.N.Y. Dec. 21, 2022) (exercising discretion to stay the proceedings even though "neither party [] requested a stay" and acknowledging that "*Katz* does not squarely address the issue.").

III.    Plaintiff's Pseudonym

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties," and this requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). Plaintiff, despite filing this action under the pseudonym "Jane Doe," failed, at any point in this litigation, to move to proceed under a pseudonym.

The Court, considering Plaintiff's *pro se* status, construes her submissions as a motion to proceed under a pseudonym, and denies the application. *See Natural-Unido Corp. v. Broad. Corp. Does*, No. 21-CV-05586, 2021 WL 4255053, at *1-2 (S.D.N.Y. Sept. 17, 2021). The Court considers the nonexhaustive ten-factor test set forth in *Sealed Plaintiff*, and determines that Plaintiff has failed to suggest any reason why she should be permitted to proceed under a pseudonym. Notably, the Court understands "Jane Doe," to be the pseudonym of an individual named "Shary Fernandez," as Plaintiff has already identified herself by name though the public filing of a myriad of documents that plainly indicate "Shary Fernandez" is her real name. (*See, e.g.*, AC at 10, 13, 14, 18 (attaching letters to the Amended Complaint that include the name "Shary Fernandez" in the heading and are signed "Shary Fernandez," with the first letter including a crude

single strike-through "sf." to apparently change the name to "Jane Doe"); Doc. 1 (including Plaintiff's email address as "sharyfernandez@gmail.com")). Plaintiff's public identification of herself weighs against granting pseudonymous relief, as does the contractual-based nature of her claims which are plainly not "of the degree to justify the exceptional grant of pseudonymity." *See Doe v. United States DOJ DEA*, No. 23-CV-09407, 2023 WL 7165523, at *2-3 (S.D.N.Y. Oct. 31, 2023); *Does v. Adams*, No. 24-3064, 2026 WL 1255967, at *1 (2d Cir. May 7, 2026).

Accordingly, considering the above, including the fact that "there is a presumption in favor of public access to court proceedings and records," Plaintiff's application to procced under a pseudonym is denied. *Adams*, 2026 WL 1255967, at *1. The Court deems the Amended Complaint further amended to replace "Jane Doe" with "Shary Fernandez," and the Clerk of Court is directed to modify the caption of this case accordingly.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to compel arbitration and otherwise DENIES Defendants' motion to dismiss without prejudice. The action is STAYED pending arbitration. The Court also construes Plaintiff's submissions as a motion to proceed under a pseudonym and DENIES such application.

The Clerk of Court is respectfully directed to: (i) terminate the motion (Doc. 31); (ii) modify the caption to replace "Jane Doe" with "Shary Fernandez" as the proper Plaintiff in this matter; (iii) mail a copy of this Opinion and Order to Plaintiff; and (iv) administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[13]

---

[13] *See Zimmerman v. UBS AG*, No. 17-CV-4503, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), *appeal dismissed*, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry

13

**SO ORDERED.**

Dated:    White Plains, New York
          June 29, 2026

_____
PHILIP M. HALPERN
United States District Judge

---

marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").